## Boston Iron Company *vs.* Hale.

Where one furnishes an agent with money to make a purchase, and the agent purchases the goods on credit, the principal is not liable to the vendor, notwithstanding the goods have come to his use, unless he had previously allowed the agent to purchase on credit, and thus authorized the vendor to trust him.

Assumpsit, upon an account annexed, in which the defendant was charged,

1828.
Feb. 9.——45 bundles Shoe Shapes, 1 ton, 10 lbs. at $115, - - $115 51.
            Discount for cash, 3 per cent. - - - - - - - - 3 46.
                                                            ——————
                                            $112 05.

On the trial, it appeared in evidence that in Feb. 1828, the defendant delivered to one James C. Sewall, who was then going to Boston, $112, with directions on the envelope to purchase for him a ton of manufactured iron shoe shapes, at a given price, with a discount for cash, observing that it might be bought at that price of the plaintiffs, and instructed him, if he had not time to make the purchase, to hand the money and directions to one E. W. Doubleday, and request him to purchase the iron with it.    Sewall delivered the money to Doubleday, with the directions.  Doubleday called on the agent of the plaintiffs, with a paper in his hand, saying that he had an order from the defendant to purchase a ton of horse shoe shapes; that he wished them put on board the Dover packet that night, and that the defendant would send the money the beginning of the next week, or as soon as he received the bill.   The iron was accordingly loaded upon a team sent by Doubleday, and charged to the defendant.   It was understood that it was a cash sale, the money to be paid in a few days; the usage being to consider cash sales to be paid for within two or three days.  The iron was duly received by the defendant, and was cred-

ited to cash, he supposing it was paid for ; but the money was never paid over by Doubleday to the plaintiffs.

It further appeared, that several times before this, Doubleday had purchased iron of the plaintiffs, which he said was for the defendant. These purchases were also made for cash. The bills were made out to the defendant, and the money was either paid down by Doubleday, or within two or three days after the purchases ; but it did not appear that he ever presented any order from the defendant, or that he had any directions from him, unless it be inferred from the fact of his making purchases ; and the plaintiffs did not know that he purchased for the defendant except from the declaration of Doubleday himself.

It was further in evidence, that in 1828 the agent of the plaintiffs repeatedly called at the store in which Doubleday was a clerk, and enquired for him ; and on one occasion gave as a reason that he had a claim against him for about $112, for iron sold for cash, and said he had waited a long time, and would wait no longer, and he asked his christian name, with a view to a suit.

A verdict was taken, by consent, for the plaintiffs, subject to be set aside, and judgment entered for the defendant, according to the opinion of this court on the foregoing case.

*Hale* and *Woodman*, for the defendant. The defendant must be charged, if charged, upon the ground that Doubleday was general or special agent. *Patterson* vs. *Gandesequi*, 15 *East* 62.

The credit was not given to the defendant, but to Doubleday. All the sales to the defendant had been cash sales, and the money paid at the time, or in a few days after.

Doubleday was a special agent, and had no authority to pledge the credit of his principal. *Long on Sales* 220 ; 9 *Pick.* 539, *Snow* vs. *Perry ;* 3 *D. & E.* 757, *Fenn* vs. *Harrison ; Com. on Contracts* 240 ; *Chitty on Con.* 58 ; 21 *Com. Law Rep.* 421, *Todd* vs. *Robinson ;* 6 *Cowen* 357,

*Anderson* vs. *Kneeland ; 15 Johns.* 44, *Munn* vs. *The Commission Co.*   Doubleday told the plaintiffs he had an order. They should have called upon him to produce it.

*Bartlett*, for the plaintiffs, cited 1 *Ld. Raym.* 224, *Bolton* vs. *Hillersden ; 3 Salk.* 234, *Boulton* vs. *Arlsden ;* 1 *Str.* 506, *Hazard* vs. *Treadwell ;* 1 *Esp.* 350, *Precious* vs. *Abel.*

PARKER, J.   The goods in this case were purchased by an agent of the defendant, and came to his use. This is *prima facie* sufficient to charge him with the payment of the value, but it is not conclusive against him.

It appeared in evidence, that prior to the purchase he furnished the agent with money, and directed a purchase of iron for cash.   The agent had no authority, therefore, in this particular instance to pledge the credit of the defendant.   1 *Shower* 95; 5 *Esp. N. P. C.* 76, *Rusby* vs. *Scarlett ;* 3 *Esp.* 214, *Pearce* vs. *Rogers ; Peake's N. P. C.* 47, *Stubbing* vs. *Hintz ; Payley on Agency* 137.

Nor does it appear that the defendant had at prior times authorized Doubleday to deal with the plaintiffs on credit, or that he had ever assented to his doing so.   The plaintiffs then had no right to presume an authority in Doubleday to pledge the credit of the defendant, in this instance, on the ground that he had been authorized to do so before, and that such had been the course of dealing between the parties. *Shower* 95; 3 *Salk.* 234, *Sir Robert Wayland's case ; Ryan & Moody* 217, *Todd* vs. *Robinson ;* 9 *Bingham* 19, *Prescott* vs. *Flinn ;* 1 *Esp.* 61, *Neal* vs. *Irving.*

The case, *Hazard* vs. *Treadwell,* 1 *Str.* 506, is of questionable authority, inasmuch as there had been but one instance in which the master had paid for goods taken by the servant.

That of *Boulton* vs. *Arlsden,* 3 *Salk.* 234, must be received with some qualification.   If the master receive and use goods purchased by his servant, on credit, without au-

thority, and the master did not furnish the money to make the purchase, he may be liable. *Vide S. C.* 1 *Ld. Raym.* 224, under the name of *Bolton* vs. *Hillersden.*

And the reason given for the rule laid down in *Sir Robert Wayland's case* is not the true foundation of the rule. The master had there given the servant authority to take up goods on credit, and supplied him afterwards with money to pay. It was no concern of the creditor, that the servant embezzled his master's money, after the debt had been lawfully contracted.

The defendant never having authorized Doubleday to take up goods on credit, or assented to his so doing, and having furnished him with money to make this purchase before it was made, has in fact paid for the goods he received; and if the plaintiffs have not received the money, it is because they have trusted to the representations of Doubleday, and been deceived by him, without any fault of the defendant.

Nor does the custom to deliver the goods, and wait two or three days for payment, on cash sales, make any difference. It does not appear that the defendant had ever authorized Doubleday to make any purchases without having furnished him the money before the purchase was made. If it had been shown that the defendant had directed Doubleday to purchase for cash, without having placed the money in his hands, and had afterwards furnished him the money within two or three days of the delivery, that might have altered the case. By such a course the defendant would have authorized Doubleday to pledge his credit; for if he had directed the purchase and delivery of the goods before the money was furnished, on the ground that two or three days were allowed for payment on a cash sale, he would in fact have taken a credit for that time, and have authorized the pledge of his credit in that manner; and, in such case, it might well have been contended, that the plaintiffs were authorized by the defendant to deliver the goods without payment, and on the defendant's responsibility; and that a con-

version of the money subsequently furnished, was an infidelity to the defendant, and not to the plaintiffs. But this does not appear ever to have been the case. If then the plaintiffs delivered goods on the order of Doubleday, without receiving the money, they must be considered as having trusted him thus far. A custom to wait two or three days for payment on cash sales, when the goods are delivered, is a custom to trust the party who is liable, for that period of time, but cannot change the liability in this case.

It appears further from the evidence, that the plaintiffs probably understood, at the time, that Doubleday was the party responsible, as they attempted in the first instance to procure payment from him.

*Judgment for the defendant.*